UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

| | | |
|---|---|---|
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, | : : : : : : | CASE NO. 2:19-cv-00056-WOB-CJS<br><br>JUDGE WILLIAM O. BERTELSMAN |
| Plaintiffs, | : : | |
| v. | : : | |
| NBCUNIVERSAL MEDIA, LLC, | : : | |
| Defendant. | : : | |

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO STRIKE**

**INTRODUCTION**

In its Motion to Strike, NBCUniversal complains about the fact that Nicholas Sandmann has conducted an investigation of Nathan Phillips – an investigation that NBCUniversal negligently failed to undertake before republishing Phillips' false factual narrative as "news." NBCUniversal seeks to have its Motion to Dismiss considered while depriving the Court of the benefit of the well-pleaded allegations in the First Amended Complaint which set forth in detail facts establishing that Nathan Phillips was a biased, unreliable, and untruthful witness. (Am. Compl. ¶¶ 147-185).

In his defamation action, Nicholas asserts in part that NBCUniversal was negligent in republishing Phillips' false and defamatory factual narrative without investigation. Phillips' credibility is at issue – indeed, Phillips' lack of credibility strikes at the very heart of whether NBCUniversal was negligent. NBCUniversal contends in its Motion to Dismiss that it had an unfettered right to republish Phillips' accusations against Nicholas. However, even the most cursory review of Phillips' background and activities reveals that Phillips was not a credible witness and should not have been given carte blanche to spread his lies on NBCUniversal's broadcasts.

Phillips is a biased, untruthful activist with a history of protesting against policies enacted by President Trump and protesting on the steps of a Trump Hotel. Phillips frequently sought publicity to further his activist causes, and he even specifically used the January 18 incident during a publicity stunt at a Catholic Church the day after the incident. His false factual narrative deserved closer review for many reasons, including the fact that his story about Nicholas was strikingly similar to a prior false claim of harassment made by Phillips against white students, with Phillips even using the same words to describe the encounters. Phillips lacked credibility, as evidenced by his stolen

1

valor and admissions of criminal activities. If NBCUniversal had bothered to learn even some of these publicly available facts about Phillips through a simple Google search, NBCUniversal should have denied Phillips access to its cameras, microphones, and Internet ink to advance his agenda with a false factual narrative and accusations against Nicholas, a minor. The entirety of the information that NBCUniversal should have known by a proper investigation paints a clear picture of a self-aggrandizing left-leaning activist who manufactures stories to obtain publicity and support for his causes and who will say anything to bolster his lies. Contrary to the overwhelming publicly available information, NBCUniversal portrayed Phillips as an innocent Native American elder and Vietnam veteran who was the victim of racist misconduct by a 16-year-old boy and his classmates.

NBCUniversal's motion to strike is completely unfounded at best – and frivolous and harassing at worst – and must be denied.

## PROCEDURAL HISTORY

On May 1, 2019, Nicholas filed his original Complaint against NBCUniversal. (Doc. 1). On July 29, 2019, NBCUniversal filed a Motion to Dismiss the original Complaint under Rule 12(b)(6). (Doc. 21). On August 19, 2019, Nicholas filed his First Amended Complaint ("Amended Complaint" or "Am. Compl.") pursuant to Rule 15. (Doc. 23). Thereafter, NBCUniversal filed a Motion to Dismiss the First Amended Complaint on September 16, 2019. (Doc. 29). On October 2, 2019, this Court issued an Order Denying NBCUniversal's First Motion to Dismiss (Doc. 21) as Moot. (Doc. 32). Nicholas submits this Response in Opposition to NBCUniversal's Motion to Strike Allegations in Plaintiff's First Amended Complaint (Doc. 28), and his Response in Opposition to NBCUniversal's motion to dismiss the First Amended Complaint is being filed simultaneously herewith.

**FACTUAL BACKGROUND**

The Court is familiar with the facts of this case, and Nicholas will not repeat them here, but instead incorporates by reference the Factual Background set forth in his Opposition to NBCUniversal's Motion to Dismiss being filed simultaneously herewith.

**ARGUMENT**

I.   **LEGAL STANDARDS TO BE APPLIED BY THIS COURT.**

   A.   **Rule 12(f)**

Federal Rule of Civil Procedure 12(f) provides that "[u]pon motion made by a party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are highly disfavored:

> Both because striking a portion of a pleading is a ***drastic remedy*** and because it ***often is sought by the movant simply as a dilatory or harassing tactic***, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted.

5C Fed. Prac. & Proc. Civ. § 1380 (3d ed. 2019) (emphasis added). Although NBCUniversal failed to cite any binding authority in support of its Motion to Strike, "[t]he Sixth Circuit has held that 'the action of striking a pleading should be ***sparingly used*** by the courts' and should be 'resorted to only when required for the purposes of justice' and when 'the pleading to be stricken has ***no possible relation*** to the controversy.'" *Terrell v. Tecsec, Inc.*, No. 06-310, 2007 WL 2670047, at *9 (E.D. Ky. Sept. 7, 2007) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)) (emphasis added). Moreover, "[f]or purposes of 12(f), a scandalous pleading must 'reflect cruelly' upon the defendant's moral character, use 'repulsive language', or 'detract from the dignity of the court.'" *Id.* (citation omitted). Where potentially offensive

3

allegations are contained in a complaint, if the party can "explain[] their relevance," then those allegations should not be stricken. *Id.*

### B.     Defamation

With respect to Nicholas' defamation claim against NBCUniversal, Nicholas, as a private figure, need only establish that NBCUniversal was negligent in republishing Phillips' false factual narrative. *See, e.g., McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 886 (1981) (adopting "simple negligence" as the standard of fault required in a defamation case by a private individual). The Kentucky Supreme Court elaborated that:

> The standard used by Tennessee is a reasonable one. In *Memphis Publishing Co. v. Nichols*, Tenn., 569 S.W.2d 412, 418 (1978), the Tennessee Supreme Court said:
>
>> "(T)he appropriate question to be determined from a preponderance of the evidence is ***whether the defendant exercised reasonable care and caution in checking on the truth or falsity*** and the defamatory character of the communication before publishing it."
>
> Another way of stating the standard is that a private plaintiff may recover on a showing of simple negligence, measured by ***what a reasonably prudent person would or would not have done*** under the same or similar circumstances.

*Id.* (emphasis added).

The reliability of a source is particularly relevant in a case applying the standard of negligence:

> The assessment of the credibility and reliability of a source is one of the most important daily functions of a journalist. When a source is obviously biased, or has a clear conflict of interest or, possibly, an axe to grind, the ordinary reasonable journalist will be put on notice that the information from that source may be suspect. The ordinary reasonable journalist will treat this as a "red flag," causing the journalist to carefully cross-check and confirm information from the source. In an "actual malice" case, there is a fine line between the "mere failure to investigate," which is not "actual malice," and the deliberate turning of a blind eye despite subjective doubt about a

4

source's veracity, which can be actual malice. Under the negligence standard, the plaintiff is not burdened by this fine line. ***If the reasonable reporter would have been alerted to a source's lack of objectivity, then reliance on that source may be negligent, and this will usually be enough to create a legitimate jury question***.

"Unreasonable reliance on sources as negligence—In general," 1 Law of Defamation § 3:101 (2d ed.) (emphasis added); *see also E. W. Scripps Co. v. Cholmondelay*, 569 S.W.2d 700, 703 (Ky. Ct. App. 1978) (holding after trial that "there was substantial evidence of negligence" where the reporter relied primarily upon the factual narrative supplied by the victim's sister even though the reporter attempted to verify the sister's story with two other witnesses and "there [was] no testimony that shows that [the reporter] was aware of any falsity"); *accord Pearce v. Bell*, No. CIV.A. 86-0008, 1988 WL 57259, at *1 (D.D.C. May 18, 1988) (holding that the payment of a fee was relevant evidence as to whether "even if unwittingly," the defendant acted "with less than due care" toward the plaintiff and stating that: "We have noted that negligent defamation in the context of an investigative report may include, among other elements, a failure to pursue further investigation; unreasonable reliance on sources; unreasonable formulation of conclusions, inferences, or interpretation; or unreasonable screening or checking procedures."); *Quigley v. Rosenthal*, 43 F. Supp. 2d 1163, 1180 (D. Colo. 1999) ("Failure to investigate obvious sources of refutation or corroboration of statements, especially when there is no time-pressure on their publication, may indicate not only negligence, but the higher standard of actual malice.").

Considering the strong presumption against striking allegations from pleadings, coupled with the broad range of evidence that is relevant in determining the negligence of NBCUniversal in relying on Phillips as its primary factual source to supplement the Viral Video, this Court should deny NBCUniversal's motion to strike.

5

## II. ALL ALLEGATIONS IN THE FIRST AMENDED COMPLAINT ARE RELEVANT TO PLAINTIFF'S CLAIM FOR DEFAMATION.

Sandmann has explained – and pled – the relevance of the allegations in question. The explanation was in his initial Complaint, and the explanation is set forth again verbatim in his First Amended Complaint:

> 593. NBCUniversal ***negligently and recklessly published*** its False and Defamatory Accusations by relying on unreliable and biased ***sources with questionable credibility***.
>
> 594. NBCUniversal ***negligently and recklessly published*** its False and Defamatory Accusations by failing to conduct a reasonable investigation and relying on ***unreliable sources*** for its accusations.
>
> 595. Indeed, NBCUniversal relied primarily upon ***interviews with Phillips*** and other participants and organizers in the Indigenous People[s] March who had biased pre-dispositions.
>
> 596. Phillips is wholly unreliable and lacks credibility, as shown in part by his ***false claim to have served in Vietnam*** while a member of the military, his status as a ***professional activist with a known bias*** against President Trump and his supporters, his documented ***history of making similar false accusations***, his ***use of the January 18 incident to promote his own political and personal agenda***, the ***contradictions in his story*** established in his interviews, and the video evidence that undeniably refutes his narrative.

(Doc. 23 at ¶¶ 593-596 (emphasis added); *see also* Doc. 1 at ¶¶ 431-434 (identical allegations)). NBCUniversal has not moved to strike any of these four paragraphs from the Amended Complaint, and it did not so move with respect to the original Complaint.

Thus, while NBCUniversal does not challenge the summary of the allegations contained in ¶¶ 593-596, it does challenge the 39 paragraphs that flesh out the summary and provide more detailed information about Phillips, explaining clearly why

6

NBCUniversal knew or should have known that Phillips was an unreliable and biased witness.[1]

### A. Phillips' Activism and Publicity-Seeking Is Relevant.

Phillips' activism and publicity-seeking described in ¶¶ 147-158 (12 paragraphs) is relevant to Nicholas' claim that NBCUniversal acted negligently in republishing Phillips' false factual narrative, because it explains why Phillips sought out publicity following the January 18 incident and why he manufactured the "confrontation" in the first place.

With the exception of the protest described in ¶ 158, all of the actions described in this section of the Amended Complaint occurred prior to the January 18 incident. All of this information was readily available to NBCUniversal through a Google search of Phillips. If NBCUniversal had simply taken the time to Google its primary source for outrageous accusations against a 16-year-old boy, NBCUniversal would have learned that Phillips had a history of seeking out media and publicity to support his activism.

Phillips' protests against President Trump's policies demonstrate Phillips' bias. Nicholas does not allege, as NBCUniversal urges, that "NBCUniversal should not have published anything Phillips said … because he allegedly holds political beliefs hostile to the Trump administration…." (Mot. at 4). However, in this case, NBCUniversal had a duty to reasonably investigate Phillips and should have been aware of Phillips' pre-existing bias. The fact that Phillips had protested policies of President Trump would certainly be a relevant piece of information to have before relying on Phillips' accusations against a student wearing a MAGA cap – particularly given the fact that Phillips protested

---

[1] The outlandish nature of this motion to strike can be seen clearly from NBCUniversal's claim that 39 paragraphs out of 631 (approximately 6% of the total) in the First Amended Complaint somehow turns Nicholas' First Amended Complaint into an unfair "hit-piece about Nathan Phillips." (Mot. at 3).

7

on the steps of a Trump hotel less than one year prior to the January 18 incident and was widely pictured beating his drum and singing in protest in exactly the same stance that he took when he confronted Nicholas during the January 18 incident. (*See* Am. Compl. ¶ 155). This bias could explain, for example, why Phillips wandered through the group of students and deliberately chose to stop and beat his drum directly in front of Nicholas – a student who was wearing a MAGA cap.

The case cited by NBCUniversal for the proposition that "the mere possibility that a source may be biased" does not "without more" create actual malice actually supports Nicholas' position. *Montgomery v. Risen*, 197 F. Supp. 3d 219 (D.D.C. 2016). As an initial matter, the court in *Montgomery* was analyzing whether the plaintiff proffered sufficient evidence to establish actual malice in a public figure case – not a private figure case for negligence. Moreover, the court made it clear that the source's bias is ***relevant*** and determined that the bias did not establish actual malice in that case where the defendant "***corroborated*** the [source]'s basic claim across several different sources, undercutting [plaintiff]'s claim of bias." *Id.* at 263 (emphasis added). The court in *Montgomery* described another similar case in which a source's bias did not establish actual malice where the defendant "'also had some reason to believe the story, based upon his own research and his conversations with journalists and experts' — research and conversation that 'gave him ***reason to believe that the allegations were not fabricated***.'" *Id.* (emphasis added). In this case, NBCUniversal had no reason to believe that Phillips' accusations were not fabricated – indeed, they were fabricated out of whole cloth. Nicholas did not take any of the actions that Phillips attributed to him.

The details surrounding Phillips' activism are also relevant to how NBCUniversal falsely portrayed the entire January 18 incident. NBCUniversal repeatedly referred to

8

Phillips as a Native American elder who was "praying" as he sang the AIM song in hopes of "defusing" the situation. (*See, e.g.*, Am. Compl. at Exs. H-M). However, a review of Phillips' activist history reveals that he beats his drum and sings the AIM song during ***protests***, not to pursue peace. Phillips beat his drum and sang the AIM song – the same song he sang in Nicholas' face – when his daughter was heading back into the Standing Rock Indian Reservation camp so that she could be forcibly removed by law enforcement officers in full riot gear. (*See* Am. Compl. ¶¶ 152-54). The AIM song that Phillips sang during the January 18 incident has been used by Phillips as a rally cry against perceived oppression – not the prayer for peace described by NBCUniversal – and this information is relevant to whether NBCUniversal was negligent in relying on Phillips' false narrative that he was trying to bring peace. To the contrary, as Nicholas has alleged in his Amended Complaint, Phillips was intentionally attempting to generate a controversial confrontation by creating a false factual narrative.

### B. Phillips' Protest at a D.C. Catholic Church Is Relevant.

Nicholas has included allegations that the night following the January 18 incident, Phillips led a protest at a local Catholic Church in Washington, D.C. at approximately 5:00 pm. (Am. Compl. ¶¶ 159-165). At the time of this protest, NBCUniversal had broadcast only the First Broadcast and had published online only the First Article. Thus, virtually all of NBCUniversal's reporting on the January 18 incident occurred after Phillips' protest at the church. NBCUniversal does not identify anything objectionable in Nicholas' description of this event other than to state summarily in one sentence that it is "irrelevant." (Mot. at 5).

Phillips' protest at the Catholic Church is highly relevant to NBCUniversal's subsequent reporting on the January 18 incident – and yet, as far as Nicholas can

9

determine, NBCUniversal never once reported on this incident. Phillips led a group of supporters who literally attempted to storm into the church by force during Mass. (Am. Compl. ¶¶ 160-61). The attempted intrusion was so threatening that security guards actually locked the doors to the Basilica with the congregation still inside to protect them from Phillips' group. (*Id.* ¶ 162).

Phillips – far from being an innocent victim – demonstrated during this protest that he was leading the group and that he was strident in his hatred of the Catholic Church. He read a list of demands outside the church – solely for the benefit of the media – that sought punishment for the Covington Catholic students and also asked for the Catholic Church to be held liable for "hundred-plus years of genocide...." (*Id.* ¶¶ 163-64). NBCUniversal should have taken into account the fact that Phillips obviously had a pre-existing bias against the Catholic Church and was seeking media attention to perpetuate a false narrative by falsely accusing a white, Catholic student of racist misconduct.

Moreover, during this protest, Phillips and his supporters again beat their drums and sang the AIM song. (*Id.* ¶ 165). Phillips' use of the AIM song as a rally cry while he led a group who attempted to storm a basilica to disrupt Mass certainly should have raised huge red flags for NBCUniversal before it reported that Phillips claimed that he was using the song to "pray[] to God to help end the march on a positive note...." (*See* Am. Compl. at Ex. J).

    C.    **Phillips' Stolen Valor Is Relevant.**

Incredibly, NBCUniversal contends that Sandman's allegations about Phillips' lies about his military service should be stricken because "Phillips' statements about himself have no bearing on the subject-matter of this litigation." (Mot. at 5). A source who lies about his background is entitled to no credibility. Yet, NBCUniversal repeatedly

10

throughout its coverage of the January 18 incident attempted to bolster Phillips' credibility by highlighting his military service, specifically and prominently referencing his purported status as a Vietnam veteran:

- "Nathan Phillips, a 64-year-old Native American and ***U.S. Marine Corps veteran***…" (Am. Compl. ¶ 240 (First Broadcast));

- Subtitle "VIRAL VIDEO OF TEENS TAUNTING NATIVE AMERICAN ***VIETNAM VET*** AT THE LINCOLN MEMORIAL SPARKS OUTRAGE" (*Id.* ¶ 252(d) (First Broadcast));

- "Outrage after some teenagers taunted a Native American elder, ***a Vietnam veteran***, during a special ceremony in the nation's capital" (*Id.* ¶ 268(c) (Second Broadcast));

- "By now it's likely that you've seen this video of a group of high school students in a face-off with a Native American elder ***and a Vietnam Veteran***" (*Id.* ¶ 313(d) (Fifth Broadcast));

- "VIDEOS CIRCULATING ONLINE SHOW A TEEN STARING AT AND STANDING EXTREMELY CLOSE TO NATHAN PHILLIPS, ***A VIETNAM VETERAN***" (*Id.* ¶¶ 500(a)(iii), 541(b) (First and Fourth Articles));

- "A video appears to show teenagers mocking Native American elder and ***Vietnam veteran*** Nathan Phillips, sparking outrage on social media" (*Id.* ¶ 502 (Second Article)).

(All emphasis added).

It is undisputed that Phillips never served in Vietnam. NBCUniversal was forced to issue a Correction that Phillips "was not deployed to Vietnam." (Am. Compl. ¶ 170).

11

NBCUniversal pointed out in its Correction that Phillips did "serve[] in the Marines." (*Id.*).

Phillips and NBCUniversal both used Phillips' purported status as a Vietnam veteran to attempt to provide credibility to Phillips' false factual narrative about Nicholas. It is therefore relevant not only that this claim was false, but that Phillips intentionally lied about it. Lying about military service is so abhorred in our country that it has a special title – "stolen valor." As alleged by Nicholas, Phillips unquestionably lied about the fact that he served in Vietnam, specifically stating in publicly available videos, for example, that "I'm a Vietnam vet…. I was 'in theater'" and "Myself, I'm a Vietnam veteran…." (Am. Compl. ¶ 167). Phillips even disclosed that he obtained housing under false pretenses when he claimed in one of the videos that "I was gifted a place to stay because of my Vietnam times." (*Id.*).

NBCUniversal's false reporting that Phillips was a Vietnam veteran further demonstrates its negligence in reporting on the January 18 incident. If NBCUniversal had done simple online research, it would have learned that Phillips' claims to have served in Vietnam were not credible.[2] NBCUniversal negligently embraced all of Phillips' claims at face value with no attempt to corroborate them.

---

[2] *See, e.g.*, "Opinion: 4 things to help the media and public identify 'Stolen Valor,'" *avail. at* https://connectingvets.radio.com/articles/how-spot-stolen-valor-cases-nathan-phillips (last visited Oct. 20, 2019) ("With these winners, a quick Google search will often expose them. … As luck would have it, Phillips falls into this category, too. In that same interview with Vogue last year, the former refrigeration electrician told the reporter he was a 'Recon Ranger' while also seeming to lead the reporter to believe he was getting teary-eyed during a prayer walk while reminiscing about his time in Vietnam. The problem with that is nobody knows what a Marine Recon Ranger did in Vietnam, primarily due to it not being a job in the United States Marine Corps.").

### D.     Phillips' Previous Claim of Harassment is Relevant.

NBCUniversal contends that Nicholas' allegations in ¶¶ 171-182 about a previous claim of harassment by Phillips are "irrelevant and valueless" unless Nicholas plans to "litigate the facts of this entirely separate incident...." (Mot. at 6).  NBCUniversal again ignores the fact that the legal standard in this case is ***negligence***.  Nicholas has plausibly alleged, and will conclusively establish at the appropriate time, that NBCUniversal was negligent in relying on Phillips' narrative without corroboration.  The fact that Phillips made an extremely similar claim previously is relevant because it is yet another piece of information that NBCUniversal would have located in a quick Google search *prior* to its publication of Phillips' accusations against Nicholas, and it should have been another "red flag" to NBCUniversal that it needed corroboration for Phillips' story and that it should not rely solely on Phillips to fill in the factual gaps apparent to viewers of the Viral Video.

As Nicholas has alleged, Phillips' claim of previous harassment is eerily similar to his claim of harassment in the January 18 incident.  The earlier incident purportedly occurred in Michigan in April 2015, and involved a group of students at Eastern Michigan University. (Am. Compl. ¶ 172).  As with the January 18 incident, Phillips approached the students in question.  (*Id*. ¶ 173).  As with the January incident, Phillips used the word "ugly" to describe the situation when he stated that when he walked over to the fence, "it got really ugly."  (*Id*. ¶ 174; *compare* ¶ 500(f) ("It was getting ugly....")).  As with the January incident, Phillips told inconsistent stories about what had occurred.  (*Id*. ¶¶ 177-78).  As with the January 18 incident, Phillips gave media interviews during a subsequent protest and called on the university to discipline the students.  (*Id*. ¶ 176; *compare* ¶ 163).  As with the January 18 incident, there was no evidence to support Phillips' claims of harassment.  (*Id*. ¶ 175).  As with the January incident, Phillips' accusations were made in

13

the midst of a racially charged political climate, and Phillips used the incident to further his own political agenda. (*Id.* ¶¶ 179-80).

Regardless of whether the April 2015 incident actually occurred, it bears on NBCUniversal's negligence that it republished a story by Phillips that sounds *exactly* like a previous report by Phillips, during which he managed to garner local media attention but did not attain the national media spotlight he achieved from the January 18 incident.

### E. Phillips' Criminal History Is Relevant.

Finally, NBCUniversal attacks ¶¶ 183-185, allegations concerning Phillips' criminal activities, as "mere character assassination" and compares them to "gratuitous aspersions upon persons not named as defendants." (Mot. at 6). In these three paragraphs, Nicholas alleges that Phillips has a criminal history and that Phillips can be seen on publicly available video bragging about assaulting someone. As Nicholas explained in the Amended Complaint, these allegations are relevant to whether NBCUniversal was negligent when it republished Phillips' false factual narrative that he was "scared" and "afeared" when he was purportedly "surrounded" and "blocked" by Nicholas, a slight of stature 16-year-old boy. (*See* Am. Compl. ¶ 183).

Nicholas devotes only one paragraph in his Amended Complaint to Phillips' criminal record, alleging that Phillips has been charged with, arrested for, and/or convicted with a number of crimes, including escaping from prison, assault, and various alcohol-related crimes. (*Id.* ¶ 185). These allegations, which were publicly available to NBCUniversal before publication, should have been considered by NBCUniversal in determining in the first instance whether to publish Phillips' accusations against Nicholas.

Nicholas also devotes one paragraph to Phillips' admitted assault. In a video that was also publicly available to NBCUniversal prior to its publication of any of the articles or broadcasts at issue, Phillips laughingly asserts that he "beat up" the boyfriend of a "little blonde-hair, blue-eyed hippie girl" who spit on him (ostensibly after he returned from Vietnam). (*Id.* ¶ 184). Given this braggadocio by Phillips himself, NBCUniversal should have considered prior to publication of Phillips' accusations against Nicholas whether Phillips was creating an exaggerated and false factual narrative.

Phillips' apparent criminal record and admission of having "beat up" someone who he felt was disrespecting him are relevant to whether NBCUniversal acted negligently in republishing without question Phillips' claim that he was "blocked" and "scared" by the young student he confronted while the student who was standing still in a public space.

## CONCLUSION

For the reasons identified herein, the Defendant's Motion should be DENIED. Respectfully submitted this 21st day of October, 2019.

| | |
|---|---|
| **L. LIN WOOD, P.C.** | **Hemmer DeFrank Wessels PLLC** |
| */s/ L. Lin Wood* | */s/ Todd V. McMurtry* |
| L. Lin Wood (*pro hac vice*) | Todd V. McMurtry |
| lwood@linwoodlaw.com | Kentucky Bar No. 82101 |
| Nicole Jennings Wade (*pro hac vice*) | tmcmurtry@hemmerlaw.com |
| nwade@linwoodlaw.com | Kyle M. Winslow |
| G. Taylor Wilson (*pro hac vice*) | Kentucky Bar No. 95343 |
| twilson@linwoodlaw.com | kwinslow@hemmerlaw.com |
| Jonathan D. Grunberg (*pro hac vice*) | |
| jgrunberg@linwoodlaw.com | 250 Grandview Drive, Ste. 500 |
| | Ft. Mitchell, KY 41017 |
| 1180 W. Peachtree Street, Ste. 2040 | Tel: 859-344-1188 |
| Atlanta, GA 30309 | Fax: 859-578-3869 |
| Tel: 404-891-1402 | |
| Fax: 404-506-9111 | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 21st, 2019, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to registered CM/ECF participants.

/s/ Nicole Jennings Wade

Plaintiff's Counsel